# EXHIBIT B

## PROFIT B UNIT GRANT AGREEMENT

This Profit B Unit Grant Agreement (this "Agreement"), dated as of January 1, 2005 is between Sanjiv Mehra (the "Employee") and Phoenix Brands LLC, a Delaware limited liability company (the "Company"). Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the LLC Agreement, as defined below.

## RECITALS

WHEREAS, Section 3.2(b) of the Third Amended and Restated Limited Liability Company Agreement of the Company (the "LLC Agreement") provides that the Board of Managers of the Company is authorized, by resolution or resolutions, to grant Profit B Units (as defined in the LLC Agreement) to certain employees of the Company;

WHEREAS, by an action by written consent of the Board of Managers of the Company on January 1, 2005, the Board of Managers approved the issuance of Profit B Units to certain employees of the Company; and

WHEREAS, in consideration of the Employee's services as an employee of the Company and the additional efforts that the Employee will expend to expand the Company's business and opportunities, the Company desires to grant Profit B Units to the Employee upon the terms and conditions hereinafter set forth.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the agreements herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto hereby agree as follows:

**Section 1.     Grant of Profit B Units.** The Company hereby grants to the Employee 438 Profit B Units.

**Section 2.     Restrictions.**

(a)     Prohibitions on Transfer. Notwithstanding any provision to the contrary in this Agreement, the Profit B Units are not transferable except in accordance with Section 3.5 of the LLC Agreement.

(b)     Restricted Securities. The Employee acknowledges and understands that (i) the issuance of the Profit B Units will not be registered under any federal, state or other securities law, and they will therefore be "restricted securities" under Rule 144 under the Securities Act, and (ii) the Profit B Units may be resold only if registered pursuant to the provisions of the Securities Act or if an exemption from registration is available, and (iii) the Company is not required to register the Profit B Units.

**Section 3.     Representations and Warranties.**

(a)    The Company hereby represents and warrants to the Employee that (i) the Company is duly formed and validly existing and has full company power and authority to enter into and perform this Agreement, (ii) the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, including, without limitation, the issuance of the Profit B Units, have been authorized by the Board of Managers of the Company, (iii) this Agreement has been duly executed and delivered and constitutes a valid and binding obligation of, and shall be fully enforceable against, the Company, and (iv) the Profit B Units, when issued and delivered upon due execution of this Agreement by the Company and the Employee, will be duly authorized, validly issued and fully paid.

(b)    The Employee hereby represents and warrants to the Company that (i) this Agreement has been duly executed and delivered by the Employee and constitutes a valid and binding obligation of, and shall be fully enforceable against, the Employee, (ii) the Employee is acquiring the Profit B Units for its own account and not with a view to distribution or resale in any manner which would be in violation of the Securities Act, and (iii) the Employee is an "accredited investor" within the meaning of Rule 501(a)(4) under the Securities Act and has generally such knowledge and experience in business and financial matters and with respect to investments in securities of privately held companies that the Employee is capable of understanding and evaluating the merits and risks, and is able to bear the economic risk, of acquiring the Profit B Units pursuant to this Agreement.

Section 6.    Miscellaneous.

(a)    Amendment.  No amendment or modification of any of the provisions of this Agreement shall be effective unless in writing and signed by both the Company and the Employee.

(b)    Entire Agreement.  This Agreement and the LLC Agreement constitute the entire agreement and understanding between the Company and the Employee with respect to the Profit B Units and supersede all prior agreements and understandings, both written and oral, with respect to the Profit B Units.  This Agreement and the powers, preferences, rights, qualifications and limitations of the Profit B Units granted hereunder shall remain subject to the terms of the LLC Agreement and any amendments or modifications thereto.

(c)    Governing Law.  This Agreement and all rights, remedies, liabilities, powers and duties of the parties hereto shall be construed and interpreted according to, and governed by, the laws of the State of Delaware applicable to agreements made and to be performed entirely within such state.

(d)    Notices.  All notices, requests, or other communications provided for or permitted to be given under this Agreement must be in writing and must be given either by depositing that writing in the United States mail, addressed to the recipient, postage paid, and registered or certified with return receipt requested, or by delivering that writing to the recipient in person, by courier, or by facsimile transmission; and, except as otherwise provided in this Agreement, a notice, request, or consent given under this Agreement is effective on receipt by the Person to receive it.  All notices, requests, and consents to be sent to a party must be sent to or made at the

addresses given for that party below (or such other address as that party may specify by notice to the other party):

If to the Company:

Phoenix Brands LLC
300 Atlantic Street
Stamford, CT 06901
Facsimile: (203) 975-0352
Attn: Mark Landry

with a copy to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Facsimile: (212) 351-5316
Attn: Steven R. Shoemate, Esq.

If to the Employee:

Sanjiv Mehra
11 Stonehouse Rd
Scarsdale, NY 10583

(e)     Severability.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability (but shall be construed and given effect to the extent possible), without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

(f)     Status as an Officer.  Neither this Agreement nor the Profit B Units granted hereunder shall confer upon the Employee the right to continue to serve as an officer of the Company.

(g)     Successors.  This Agreement shall be binding upon and shall inure to the benefit of each party hereto and its successors and permitted transferees.

(h)     Payment of Withholding Tax.  In the event the Company determines that any federal, state or local tax or any other charge is required by law to be withheld or paid with respect to the grant of the Profit B Units, the Employee shall, upon notice from the Company, pay to the Company, in cash, an amount equal to such withholding tax or charge as determined by the Company in its sole discretion.  In the case taxes or other charges are determined to be payable on the grant of Profit B Units, the Company may defer issuing such Profit B Units and admitting the Employee as a member of the Company with respect to such Profit B Units until satisfactory arrangements for the payment of such tax or other charge have been made.

**IN WITNESS WHEREOF**, the parties hereto have executed and delivered this Agreement as of the date first written above.

_____
Sanjiv Mehra


PHOENIX BRANDS LLC


By:_____
Name: Mark Landry
Title:   Chief Executive Officer


80317854_1.DOC

EXHIBIT C

## PROFIT B UNIT GRANT AGREEMENT

This Profit B Unit Grant Agreement (this "Agreement"), dated as of March 14, 2006 is between Sanjiv Mehra (the "Employee") and Phoenix Brands LLC, a Delaware limited liability company (the "Company"). Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the LLC Agreement, as defined below.

### RECITALS

WHEREAS, Section 3.2(b) of the Third Amended and Restated Limited Liability Company Agreement of the Company (the "LLC Agreement") provides that the Board of Managers of the Company is authorized, by resolution or resolutions, to grant Profit B Units (as defined in the LLC Agreement) to certain employees of the Company;

WHEREAS, by an action by written consent of the Board of Managers of the Company on March 14, 2006, the Board of Managers approved the issuance of Profit B Units to certain employees of the Company; and

WHEREAS, in consideration of the Employee's services as an employee of the Company and the additional efforts that the Employee will expend to expand the Company's business and opportunities, the Company desires to grant Profit B Units to the Employee upon the terms and conditions hereinafter set forth.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the agreements herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto hereby agree as follows:

**Section 1.**    **Grant of Profit B Units.**  The Company hereby grants to the Employee 258 Profit B Units.

**Section 2.**    **Restrictions.**

(a)    Prohibitions on Transfer.  Notwithstanding any provision to the contrary in this Agreement, the Profit B Units are not transferable except in accordance with Section 3.5 of the LLC Agreement.

(b)    Restricted Securities.  The Employee acknowledges and understands that (i) the issuance of the Profit B Units will not be registered under any federal, state or other securities law, and they will therefore be "restricted securities" under Rule 144 under the Securities Act, and (ii) the Profit B Units may be resold only if registered pursuant to the provisions of the Securities Act or if an exemption from registration is available, and (iii) the Company is not required to register the Profit B Units.

### Section 3.    Representations and Warranties.

(a)    The Company hereby represents and warrants to the Employee that (i) the Company is duly formed and validly existing and has full company power and authority to enter into and perform this Agreement, (ii) the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, including, without limitation, the issuance of the Profit B Units, have been authorized by the Board of Managers of the Company, (iii) this Agreement has been duly executed and delivered and constitutes a valid and binding obligation of, and shall be fully enforceable against, the Company, and (iv) the Profit B Units, when issued and delivered upon due execution of this Agreement by the Company and the Employee, will be duly authorized, validly issued and fully paid.

(b)    The Employee hereby represents and warrants to the Company that (i) this Agreement has been duly executed and delivered by the Employee and constitutes a valid and binding obligation of, and shall be fully enforceable against, the Employee, (ii) the Employee is acquiring the Profit B Units for its own account and not with a view to distribution or resale in any manner which would be in violation of the Securities Act, and (iii) the Employee is an "accredited investor" within the meaning of Rule 501(a)(4) under the Securities Act and has generally such knowledge and experience in business and financial matters and with respect to investments in securities of privately held companies that the Employee is capable of understanding and evaluating the merits and risks, and is able to bear the economic risk, of acquiring the Profit B Units pursuant to this Agreement.

### Section 6.    Miscellaneous.

(a)    Amendment.  No amendment or modification of any of the provisions of this Agreement shall be effective unless in writing and signed by both the Company and the Employee.

(b)    Entire Agreement.  This Agreement and the LLC Agreement constitute the entire agreement and understanding between the Company and the Employee with respect to the Profit B Units and supersede all prior agreements and understandings, both written and oral, with respect to the Profit B Units.  This Agreement and the powers, preferences, rights, qualifications and limitations of the Profit B Units granted hereunder shall remain subject to the terms of the LLC Agreement and any amendments or modifications thereto.

(c)    Governing Law.  This Agreement and all rights, remedies, liabilities, powers and duties of the parties hereto shall be construed and interpreted according to, and governed by, the laws of the State of Delaware applicable to agreements made and to be performed entirely within such state.

(d)    Notices.  All notices, requests, or other communications provided for or permitted to be given under this Agreement must be in writing and must be given either by depositing that writing in the United States mail, addressed to the recipient, postage paid, and registered or certified with return receipt requested, or by delivering that writing to the recipient in person, by courier, or by facsimile transmission; and, except as otherwise provided in this Agreement, a notice, request, or consent given under this Agreement is effective on receipt by the Person to

receive it. All notices, requests, and consents to be sent to a party must be sent to or made at the addresses given for that party below (or such other address as that party may specify by notice to the other party):

> If to the Company:
>
> Phoenix Brands LLC
> 300 Atlantic Street
> Stamford, CT 06901
> Facsimile: (203) 975-0352
> Attn: Mark Landry
>
> If to the Employee:
>
> Mr. Sanjiv Mehra
> 11 Stonehouse Road
> Scarsdale, NY 10583

(e)     Severability.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability (but shall be construed and given effect to the extent possible), without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

(f)     Status as an Officer.  Neither this Agreement nor the Profit B Units granted hereunder shall confer upon the Employee the right to continue to serve as an officer of the Company.

(g)     Successors.  This Agreement shall be binding upon and shall inure to the benefit of each party hereto and its successors and permitted transferees.

(h)     Payment of Withholding Tax.  In the event the Company determines that any federal, state or local tax or any other charge is required by law to be withheld or paid with respect to the grant of the Profit B Units, the Employee shall, upon notice from the Company, pay to the Company, in cash, an amount equal to such withholding tax or charge as determined by the Company in its sole discretion.  In the case taxes or other charges are determined to be payable on the grant of Profit B Units, the Company may defer issuing such Profit B Units and admitting the Employee as a member of the Company with respect to such Profit B Units until satisfactory arrangements for the payment of such tax or other charge have been made.

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Agreement as of the date first written above.

_____

Sanjiv Mehra


PHOENIX BRANDS LLC

By: _____
Name:  E. Mark Landry
Title:   President & CEO


80317854_1.DOC

# EXHIBIT D

# PROFIT B UNIT GRANT AGREEMENT

This Profit B Unit Grant Agreement (this "Agreement"), dated as of March 01, 2007 is between Sanjiv Mehra (the "Employee") and Phoenix Brands LLC, a Delaware limited liability company (the "Company"). Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the LLC Agreement, as defined below.

## RECITALS

**WHEREAS,** Section 3.2(b) of the Third Amended and Restated Limited Liability Company Agreement of the Company (the "LLC Agreement") provides that the Board of Managers of the Company is authorized, by resolution or resolutions, to grant Profit B Units (as defined in the LLC Agreement) to certain employees of the Company;

**WHEREAS,** by an action by written consent of the Board of Managers of the Company on March 01, 2007, the Board of Managers approved the issuance of Profit B Units to certain employees of the Company; and

**WHEREAS,** in consideration of the Employee's services as an employee of the Company and the additional efforts that the Employee will expend to expand the Company's business and opportunities, the Company desires to grant Profit B Units to the Employee upon the terms and conditions hereinafter set forth.

## AGREEMENT

**NOW, THEREFORE,** in consideration of the foregoing recitals and the agreements herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto hereby agree as follows:

**Section 1.     Grant of Profit B Units.** The Company hereby grants to the Employee 464 Profit B Units.

**Section 2.     Restrictions.**

(a)     _Prohibitions on Transfer._ Notwithstanding any provision to the contrary in this Agreement, the Profit B Units are not transferable except in accordance with Section 3.5 of the LLC Agreement.

(b)     _Restricted Securities._ The Employee acknowledges and understands that (i) the issuance of the Profit B Units will not be registered under any federal, state or other securities law, and they will therefore be "restricted securities" under Rule 144 under the Securities Act, and (ii) the Profit B Units may be resold only if registered pursuant to the provisions of the Securities Act or if an exemption from registration is available, and (iii) the Company is not required to register the Profit B Units.

### Section 3.    Representations and Warranties.

(a)    The Company hereby represents and warrants to the Employee that (i) the Company is duly formed and validly existing and has full company power and authority to enter into and perform this Agreement, (ii) the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, including, without limitation, the issuance of the Profit B Units, have been authorized by the Board of Managers of the Company, (iii) this Agreement has been duly executed and delivered and constitutes a valid and binding obligation of, and shall be fully enforceable against, the Company, and (iv) the Profit B Units, when issued and delivered upon due execution of this Agreement by the Company and the Employee, will be duly authorized, validly issued and fully paid.

(b)    The Employee hereby represents and warrants to the Company that (i) this Agreement has been duly executed and delivered by the Employee and constitutes a valid and binding obligation of, and shall be fully enforceable against, the Employee, (ii) the Employee is acquiring the Profit B Units for its own account and not with a view to distribution or resale in any manner which would be in violation of the Securities Act, and (iii) the Employee is an "accredited investor" within the meaning of Rule 501(a)(4) under the Securities Act and has generally such knowledge and experience in business and financial matters and with respect to investments in securities of privately held companies that the Employee is capable of understanding and evaluating the merits and risks, and is able to bear the economic risk, of acquiring the Profit B Units pursuant to this Agreement.

### Section 6.    Miscellaneous.

(a)    Amendment.  No amendment or modification of any of the provisions of this Agreement shall be effective unless in writing and signed by both the Company and the Employee.

(b)    Entire Agreement.  This Agreement and the LLC Agreement constitute the entire agreement and understanding between the Company and the Employee with respect to the Profit B Units and supersede all prior agreements and understandings, both written and oral, with respect to the Profit B Units.  This Agreement and the powers, preferences, rights, qualifications and limitations of the Profit B Units granted hereunder shall remain subject to the terms of the LLC Agreement and any amendments or modifications thereto.

(c)    Governing Law.  This Agreement and all rights, remedies, liabilities, powers and duties of the parties hereto shall be construed and interpreted according to, and governed by, the laws of the State of Delaware applicable to agreements made and to be performed entirely within such state.

(d)    Notices.  All notices, requests, or other communications provided for or permitted to be given under this Agreement must be in writing and must be given either by depositing that writing in the United States mail, addressed to the recipient, postage paid, and registered or certified with return receipt requested, or by delivering that writing to the recipient in person, by courier, or by facsimile transmission; and, except as otherwise provided in this Agreement, a notice, request, or consent given under this Agreement is effective on receipt by the Person to

receive it. All notices, requests, and consents to be sent to a party must be sent to or made at the addresses given for that party below (or such other address as that party may specify by notice to the other party):

> If to the Company:
>
> Phoenix Brands LLC
> 300 Atlantic Street
> Stamford, CT 06901
> Facsimile: (203) 975-0352
> Attn: Mark Landry
>
> If to the Employee:
>
> Mr. Sanjiv Mehra
> 11 Stonehouse Road
> Scarsdale, NY 10583

(e)    Severability. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability (but shall be construed and given effect to the extent possible), without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

(f)    Status as an Officer. Neither this Agreement nor the Profit B Units granted hereunder shall confer upon the Employee the right to continue to serve as an officer of the Company.

(g)    Successors. This Agreement shall be binding upon and shall inure to the benefit of each party hereto and its successors and permitted transferees.

(h)    Payment of Withholding Tax. In the event the Company determines that any federal, state or local tax or any other charge is required by law to be withheld or paid with respect to the grant of the Profit B Units, the Employee shall, upon notice from the Company, pay to the Company, in cash, an amount equal to such withholding tax or charge as determined by the Company in its sole discretion. In the case taxes or other charges are determined to be payable on the grant of Profit B Units, the Company may defer issuing such Profit B Units and admitting the Employee as a member of the Company with respect to such Profit B Units until satisfactory arrangements for the payment of such tax or other charge have been made.

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Agreement as of the date first written above.

_____

Sanjiv Mehra


PHOENIX BRANDS LLC

By:_____

Name:  E. Mark Landry

Title:  President & CEO


80317854_1.DOC

# EXHIBIT E

## MANAGEMENT UNIT GRANT AGREEMENT

This Management Unit Grant Agreement (this "Agreement"), dated as of October 24, 2004 is between Sanjiv Mehra (the "Executive") and Phoenix Brands LLC, a Delaware limited liability company (the "Company").

### RECITALS

WHEREAS, Section 3.2(b) of the Second Amended and Restated Limited Liability Company Agreement of the Company (the "LLC Agreement") provides that the Board of Managers of the Company is authorized, by resolution or resolutions, to grant Management Units (as defined in the LLC Agreement) to officers of the Company;

WHEREAS, by an action by written consent of the Board of Managers of the Company on October 1, 2004, the Board of Managers approved the issuance of Management Units to officers of the Company; and

WHEREAS, in consideration of the Executive's services as an officer of the Company and the additional efforts that the Executive will expend to expand the Company's business and opportunities, the Company desires to grant Management Units to the Executive upon the terms and conditions hereinafter set forth.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the agreements herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto hereby agree as follows:

**Section 1.     Definitions.** Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the LLC Agreement. When used in this Agreement:

"Change of Control" means (a) any sale, exchange or other transfer of all or substantially all of the property, assets or business of the Company (or its successor entity pursuant to Section 3.9 of the LLC Agreement); (b) any merger or consolidation to which the Company (or its successor entity) is a party or any sale or other transfer through a single or a series of transactions in which the holders of the voting securities of the Company (or its successor entity) is a party or any sale or other transfer through a single or a series of transactions in which the holders of the voting securities of the Company (or its successor entity) immediately prior thereto own less than fifty percent (50%) of the outstanding voting securities of the surviving entity immediately following such transaction; or (c) any sale or other transfer through a single transaction or a series of transactions that results in the holders of the voting securities of the Company (or its successor entity) immediately prior thereto owning less than fifty percent (50%) of the outstanding voting securities of the Company (or its successor entity) immediately following such transaction or transactions.

"Cause" means (a) the willful and continued failure or refusal of the Executive to substantially perform the duties required of him or abide by the code of conduct applicable to

him as an Executive of the Company after the Executive is given written notice of such duties or code of conduct by the Company, (b) any willful and material violation by the Executive of any law or regulation applicable to the business of the Company or any of its Subsidiaries, or the Executive's conviction of, or a plea of nolo contendere to, a felony, or any willful perpetration by the Executive of a common law fraud, or (c) any other gross negligence or willful misconduct by the Executive that is materially injurious to the financial condition or business reputation of, or is otherwise materially injurious to, the Company or any of its Subsidiaries.

### Section 2.      Management Units.

(a)      <u>Grant of the Management Units</u>.  The Company hereby grants to the Executive 500 Management Units.

(b)      <u>Vesting</u>.  The Management Units shall be unvested upon grant, and shall vest over a five-year period, with 20% of the aggregate Management Units granted to the Executive to vest beginning on January 5, 2005 and on each anniversary thereof; <u>provided</u> that the Executive continues to be employed by the Company or its Subsidiaries on each such vesting date.

(c)      <u>Change of Control</u>.  Upon a Change of Control of the Company or an initial public offering of the Company's equity securities (or the equity securities of a successor entity of the Company pursuant to Section 3.9 of the LLC Agreement), all unvested Management Units (or securities issued in lieu thereof by a successor entity pursuant to Section 3.9 of the LLC Agreement) shall vest immediately; provided that the recipient has remained continuously employed by the Company or its Subsidiaries through the date on which such initial public offering or Change of Control is consummated.  Upon a Change of Control and the concurrent vesting of the outstanding Management Units, the Executive shall have a Tag-Along Right with respect to such Change of Control, as set forth in Section 3.5(c) of the LLC Agreement, and the Executive shall be treated in connection with his exercise of the Tag-Along Right as if he were holding Common Units; <u>provided</u>, <u>however</u>, that the consideration to be paid with respect to such Management Units <i>vis-à-vis</i> the Common Units shall be determined based on the relative Fair Market Value of each Membership Unit in accordance with the terms of the LLC Agreement.

### Section 3.      Forfeiture.

(a)      <u>Unvested Units</u>.  In the event that the Executive's employment by the Company or its Subsidiaries is terminated for any reason or for no reason, all unvested Management Units shall be forfeited immediately upon such termination of employment and become null and void.

(b)      <u>Vested Units</u>.

(i)      In the event that the Executive's employment by the Company or its Subsidiaries is terminated by the Company or by the Executive for any reason or no reason, except for terminations for Cause by the Company or by reason of death or disability of the Executive, the Company shall have the right, but not the obligation, to repurchase all or any portion of the vested Management Units held by the Executive (and/or his Permitted Transferees or estate) within 90 days of the termination of employment at a purchase price equal to the Fair Market Value of the vested Management Units; <u>provided</u>, <u>however</u>, the Company shall have the right to assign its

right of repurchase hereunder to any other person, at the sole discretion of the Company, including but not limited to the then Members of the Company.

(ii)    In the event that the Executive's employment by the Company or its Subsidiaries is terminated at any time by the Company for Cause, all vested Management Units shall be forfeited immediately upon such termination of employment and become null and void.

**Section 4.    Restrictions.**

(a)    Prohibitions on Transfer.  Notwithstanding any provision to the contrary in this Agreement, the Management Units are not transferable except in accordance with Section 3.5 of the LLC Agreement.

(b)    Restricted Securities.  The Executive acknowledges and understands that (i) the issuance of the Management Units will not be registered under any federal, state or other securities law, and they will therefore be "restricted securities" under Rule 144 under the Securities Act, and (ii) the Management Units may be resold only if registered pursuant to the provisions of the Securities Act or if an exemption from registration is available, and (iii) the Company is not required to register the Management Units, except pursuant to any registration rights granted to the Executive pursuant to the Registration Rights Agreement entered into by the Executive with the Company dated July 29, 2004.

**Section 5.    Representations and Warranties.**

(a)    The Company hereby represents and warrants to the Executive that (i) the Company is duly formed and validly existing and has full company power and authority to enter into and perform this Agreement, (ii) the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, including, without limitation, the issuance of the Management Units, have been authorized by the Board of Managers of the Company, (iii) this Agreement has been duly executed and delivered and constitutes a valid and binding obligation of, and shall be fully enforceable against, the Company, and (iv) the Management Units, when issued and delivered upon due execution of this Agreement by the Company and the Executive, will be duly authorized, validly issued and fully paid.

(b)    The Executive hereby represents and warrants to the Company that (i) this Agreement has been duly executed and delivered by the Executive and constitutes a valid and binding obligation of, and shall be fully enforceable against, the Executive, (ii) the Executive will notify the Company of the Executive's intention to make an election pursuant to Section 83(b) of the Internal Revenue Code of 1986, as amended, with respect to the Management Units for the Executive's taxable year ending December 31, 2004, (iii) the Executive is acquiring the Management Units for its own account and not with a view to distribution or resale in any manner which would be in violation of the Securities Act, and (iv) the Executive is an "accredited investor" within the meaning of Rule 501(a)(4) under the Securities Act and has generally such knowledge and experience in business and financial matters and with respect to investments in securities of privately held companies that the

Executive is capable of understanding and evaluating the merits and risks, and is able to bear the economic risk, of acquiring the Management Units pursuant to this Agreement.

### Section 6.     Miscellaneous.

(a)     Amendment.  No amendment or modification of any of the provisions of this Agreement shall be effective unless in writing and signed by both the Company and the Executive.

(b)     Entire Agreement.  This Agreement and the LLC Agreement constitute the entire agreement and understanding between the Company and the Executive with respect to the Management Units and supersede all prior agreements and understandings, both written and oral, with respect to the Management Units.  This Agreement and the powers, preferences, rights, qualifications and limitations of the Management Units granted hereunder shall remain subject to the terms of the LLC Agreement and any amendments or modifications thereto.

(c)     Governing Law.  This Agreement and all rights, remedies, liabilities, powers and duties of the parties hereto shall be construed and interpreted according to, and governed by, the laws of the State of Delaware applicable to agreements made and to be performed entirely within such state.

(d)     Notices.  All notices, requests, or other communications provided for or permitted to be given under this Agreement must be in writing and must be given either by depositing that writing in the United States mail, addressed to the recipient, postage paid, and registered or certified with return receipt requested, or by delivering that writing to the recipient in person, by courier, or by facsimile transmission; and, except as otherwise provided in this Agreement, a notice, request, or consent given under this Agreement is effective on receipt by the Person to receive it.  All notices, requests, and consents to be sent to a party must be sent to or made at the addresses given for that party below (or such other address as that party may specify by notice to the other party):

> If to the Company:
>
> Phoenix Brands LLC
> 300 Atlantic Street
> Stamford, CT 06901
> Facsimile: (203) 975-0352
> Attn: Mark Landry
>
> with a copy to:
>
> Gibson, Dunn & Crutcher LLP
> 200 Park Avenue
> New York, NY 10166
> Facsimile: (212) 351-5316
> Attn: Steven R. Shoemate, Esq.
>
> If to the Executive:

Sanjiv Mehra
11 Stonehouse Road
Scarsdale, NY 10583
Facsimile: (914) 472-6081

(e)     Severability.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability (but shall be construed and given effect to the extent possible), without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

(f)     Status as an Officer.  Neither this Agreement nor the Management Units granted hereunder shall confer upon the Executive the right to continue to serve as an officer of the Company.

(g)     Successors.  This Agreement shall be binding upon and shall inure to the benefit of each party hereto and its successors and permitted transferees.

(h)     Payment of Withholding Tax.  In the event the Company determines that any federal, state or local tax or any other charge is required by law to be withheld or paid with respect to the grant or vesting of the Management Units, the Executive shall, upon notice from the Company, pay to the Company, in cash, an amount equal to such withholding tax or charge as determined by the Company in its sole discretion.  In the case taxes or other charges are determined to be payable on the grant of Management Units, the Company may defer issuing such Management Units and admitting the Executive as a member of the Company with respect to such Management Units until satisfactory arrangements for the payment of such tax or other charge have been made.

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Agreement as of the date first written above.

_____
Sanjiv Mehra


PHOENIX BRANDS LLC

By: _____
Name:
Title:

EXHIBIT F

## MANAGEMENT UNIT GRANT AGREEMENT

This Management Unit Grant Agreement (this "Agreement"), dated as of January 1, 2005 is between Sanjiv Mehra (the "Executive") and Phoenix Brands LLC, a Delaware limited liability company (the "Company").

### RECITALS

WHEREAS, Section 3.2(b) of the Third Amended and Restated Limited Liability Company Agreement of the Company (the "LLC Agreement") provides that the Board of Managers of the Company is authorized, by resolution or resolutions, to grant Management Units (as defined in the LLC Agreement) to officers of the Company;

WHEREAS, by an action by written consent of the Board of Managers of the Company on January 1, 2005, the Board of Managers approved the issuance of Management Units to officers of the Company; and

WHEREAS, in consideration of the Executive's services as an officer of the Company and the additional efforts that the Executive will expend to expand the Company's business and opportunities, the Company desires to grant Management Units to the Executive upon the terms and conditions hereinafter set forth.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the agreements herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto hereby agree as follows:

**Section 1.      Definitions.** Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the LLC Agreement. When used in this Agreement:

"Change of Control" means (a) any sale, exchange or other transfer of all or substantially all of the property, assets or business of the Company (or its successor entity pursuant to Section 3.9 of the LLC Agreement); (b) any merger or consolidation to which the Company (or its successor entity) is a party or any sale or other transfer through a single or a series of transactions in which the holders of the voting securities of the Company (or its successor entity) is a party or any sale or other transfer through a single or a series of transactions in which the holders of the voting securities of the Company (or its successor entity) immediately prior thereto own less than fifty percent (50%) of the outstanding voting securities of the surviving entity immediately following such transaction; or (c) any sale or other transfer through a single transaction or a series of transactions that results in the holders of the voting securities of the Company (or its successor entity) immediately prior thereto owning less than fifty percent (50%) of the outstanding voting securities of the Company (or its successor entity) immediately following such transaction or transactions.

"Cause" means (a) the willful and continued failure or refusal of the Executive to substantially perform the duties required of him or abide by the code of conduct applicable to

him as an Executive of the Company after the Executive is given written notice of such duties or code of conduct by the Company, (b) any willful and material violation by the Executive of any law or regulation applicable to the business of the Company or any of its Subsidiaries, or the Executive's conviction of, or a plea of nolo contendere to, a felony, or any willful perpetration by the Executive of a common law fraud, or (c) any other gross negligence or willful misconduct by the Executive that is materially injurious to the financial condition or business reputation of, or is otherwise materially injurious to, the Company or any of its Subsidiaries.

Section 2.    **Management Units.**

(a)    <u>Grant of the Management Units</u>.  The Company hereby grants to the Executive eighty-two (82) Management Units.

(b)    <u>Vesting</u>.  The Management Units shall be unvested upon grant, and shall vest over a five-year period, with 20% of the aggregate Management Units granted to the Executive to vest beginning on January 5, 2005 and on each anniversary thereof; <u>provided</u> that the Executive continues to be employed by the Company or its Subsidiaries on each such vesting date.

(c)    <u>Change of Control</u>.  Upon a Change of Control of the Company or an initial public offering of the Company's equity securities (or the equity securities of a successor entity of the Company pursuant to Section 3.9 of the LLC Agreement), all unvested Management Units (or securities issued in lieu thereof by a successor entity pursuant to Section 3.9 of the LLC Agreement) shall vest immediately; provided that the recipient has remained continuously employed by the Company or its Subsidiaries through the date on which such initial public offering or Change of Control is consummated.  Upon a Change of Control and the concurrent vesting of the outstanding Management Units, the Executive shall have a Tag-Along Right with respect to such Change of Control, as set forth in Section 3.5(c) of the LLC Agreement, and the Executive shall be treated in connection with his exercise of the Tag-Along Right as if he were holding Common Units; <u>provided</u>, <u>however</u>, that the consideration to be paid with respect to such Management Units *vis-à-vis* the Common Units shall be determined based on the relative Fair Market Value of each Membership Unit in accordance with the terms of the LLC Agreement.

Section 3.    **Forfeiture.**

(a)    <u>Unvested Units</u>.  In the event that the Executive's employment by the Company or its Subsidiaries is terminated for any reason or for no reason, all unvested Management Units shall be forfeited immediately upon such termination of employment and become null and void.

(b)    <u>Vested Units</u>.

(i)    In the event that the Executive's employment by the Company or its Subsidiaries is terminated by the Company or by the Executive for any reason or no reason, except for terminations for Cause by the Company or by reason of death of the Executive, the Company shall have the right, but not the obligation, to repurchase all or any portion of the vested Management Units held by the Executive (and/or his Permitted Transferees or estate) within 90 days of the termination of employment at a purchase price equal to the Fair Market Value of the vested Management Units; <u>provided</u>, <u>however</u>, the Company shall have the right to assign its right of repurchase hereunder to

any other person, at the sole discretion of the Company, including, but not limited to, the then Members of the Company; <u>provided further</u>, in the event that the Executive's employment by the Company is terminated by reason of the death of the Executive, the Company shall offer to repurchase all of the vested Management Units held by the Executive in the manner set forth in this Section 3(b)(i).

(ii)    In the event that the Executive's employment by the Company or its Subsidiaries is terminated at any time by the Company for Cause, all vested Management Units shall be forfeited immediately upon such termination of employment and become null and void.

**Section 4.    Restrictions.**

(a)    <u>Prohibitions on Transfer</u>.  Notwithstanding any provision to the contrary in this Agreement, the Management Units are not transferable except in accordance with Section 3.5 of the LLC Agreement.

(b)    <u>Restricted Securities</u>.  The Executive acknowledges and understands that (i) the issuance of the Management Units will not be registered under any federal, state or other securities law, and they will therefore be "restricted securities" under Rule 144 under the Securities Act, and (ii) the Management Units may be resold only if registered pursuant to the provisions of the Securities Act or if an exemption from registration is available, and (iii) the Company is not required to register the Management Units, except pursuant to any registration rights granted to the Executive pursuant to the Registration Rights Agreement entered into by the Executive with the Company dated as of July 29, 2004.

**Section 5.    Representations and Warranties.**

(a)    The Company hereby represents and warrants to the Executive that (i) the Company is duly formed and validly existing and has full company power and authority to enter into and perform this Agreement, (ii) the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, including, without limitation, the issuance of the Management Units, have been authorized by the Board of Managers of the Company, (iii) this Agreement has been duly executed and delivered and constitutes a valid and binding obligation of, and shall be fully enforceable against, the Company, and (iv) the Management Units, when issued and delivered upon due execution of this Agreement by the Company and the Executive, will be duly authorized, validly issued and fully paid.

(b)    The Executive hereby represents and warrants to the Company that (i) this Agreement has been duly executed and delivered by the Executive and constitutes a valid and binding obligation of, and shall be fully enforceable against, the Executive, (ii) the Executive will notify the Company of the Executive's intention to make an election pursuant to Section 83(b) of the Internal Revenue Code of 1986, as amended, with respect to the Management Units for the Executive's taxable year ending December 31, 2005, (iii) the Executive is acquiring the Management Units for its own account and not with a view to distribution or resale in any manner which would be in violation of the Securities Act, and (iv) the Executive is an "accredited investor" within the meaning of Rule 501(a)(4) under the

Securities Act and has generally such knowledge and experience in business and financial matters and with respect to investments in securities of privately held companies that the Executive is capable of understanding and evaluating the merits and risks, and is able to bear the economic risk, of acquiring the Management Units pursuant to this Agreement.

####    Section 6.    Miscellaneous.

(a)    <u>Amendment</u>.  No amendment or modification of any of the provisions of this Agreement shall be effective unless in writing and signed by both the Company and the Executive.

(b)    <u>Entire Agreement</u>.  This Agreement and the LLC Agreement constitute the entire agreement and understanding between the Company and the Executive with respect to the Management Units and supersede all prior agreements and understandings, both written and oral, with respect to the Management Units.  This Agreement and the powers, preferences, rights, qualifications and limitations of the Management Units granted hereunder shall remain subject to the terms of the LLC Agreement and any amendments or modifications thereto.

(c)    <u>Governing Law</u>.  This Agreement and all rights, remedies, liabilities, powers and duties of the parties hereto shall be construed and interpreted according to, and governed by, the laws of the State of Delaware applicable to agreements made and to be performed entirely within such state.

(d)    <u>Notices</u>.  All notices, requests, or other communications provided for or permitted to be given under this Agreement must be in writing and must be given either by depositing that writing in the United States mail, addressed to the recipient, postage paid, and registered or certified with return receipt requested, or by delivering that writing to the recipient in person, by courier, or by facsimile transmission; and, except as otherwise provided in this Agreement, a notice, request, or consent given under this Agreement is effective on receipt by the Person to receive it.  All notices, requests, and consents to be sent to a party must be sent to or made at the addresses given for that party below (or such other address as that party may specify by notice to the other party):

If to the Company:

Phoenix Brands LLC
300 Atlantic Street
Stamford, CT 06901
Facsimile: (203) 975-0352
Attn: Mark Landry

with a copy to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Facsimile: (212) 351-5316
Attn: Steven R. Shoemate, Esq.

80317855_1.DOC                                    4

If to the Executive:

_Sanjy Mehra_

_11 Stonehouse Rd, Scarsdale, NY 10583_

    (e)    <u>Severability</u>. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability (but shall be construed and given effect to the extent possible), without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

    (f)    <u>Status as an Officer</u>. Neither this Agreement nor the Management Units granted hereunder shall confer upon the Executive the right to continue to serve as an officer of the Company.

    (g)    <u>Successors</u>. This Agreement shall be binding upon and shall inure to the benefit of each party hereto and its successors and permitted transferees.

    (h)    <u>Payment of Withholding Tax</u>. In the event the Company determines that any federal, state or local tax or any other charge is required by law to be withheld or paid with respect to the grant or vesting of the Management Units, the Executive shall, upon notice from the Company, pay to the Company, in cash, an amount equal to such withholding tax or charge as determined by the Company in its sole discretion. In the case taxes or other charges are determined to be payable on the grant of Management Units, the Company may defer issuing such Management Units and admitting the Executive as a member of the Company with respect to such Management Units until satisfactory arrangements for the payment of such tax or other charge have been made.

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Agreement as of the date first written above.

_____

Sanjiv Mehra


PHOENIX BRANDS LLC

By: _____

Name: MARK LANARY

Title: CEO


80317855_1.DOC

# EXHIBIT G

# MANAGEMENT UNIT GRANT AGREEMENT

This Management Unit Grant Agreement (this "Agreement"), dated as of November 10, 2005 is between Sanjiv Mehra (the "Executive") and Phoenix Brands LLC, a Delaware limited liability company (the "Company").

## RECITALS

WHEREAS, Section 3.2(b) of the Third Amended and Restated Limited Liability Company Agreement of the Company (the "LLC Agreement") provides that the Board of Managers of the Company is authorized, by resolution or resolutions, to grant Management Units (as defined in the LLC Agreement) to officers of the Company;

WHEREAS, by an action by written consent of the Board of Managers of the Company, the Board of Managers approved the issuance of Management Units to officers of the Company; and

WHEREAS, in consideration of the Executive's services as an officer of the Company and the additional efforts that the Executive will expend to expand the Company's business and opportunities, the Company desires to grant Management Units to the Executive upon the terms and conditions hereinafter set forth.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and the agreements herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto hereby agree as follows:

Section 1.      Definitions. Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the LLC Agreement.  When used in this Agreement:

"Change of Control" means (a) any sale, exchange or other transfer of all or substantially all of the property, assets or business of the Company (or its successor entity pursuant to Section 3.9 of the LLC Agreement); (b) any merger or consolidation to which the Company (or its successor entity) is a party or any sale or other transfer through a single or a series of transactions in which the holders of the voting securities of the Company (or its successor entity) is a party or any sale or other transfer through a single or a series of transactions in which the holders of the voting securities of the Company (or its successor entity) immediately prior thereto own less than fifty percent (50%) of the outstanding voting securities of the surviving entity immediately following such transaction; or (c) any sale or other transfer through a single transaction or a series of transactions that results in the holders of the voting securities of the Company (or its successor entity) immediately prior thereto owning less than fifty percent (50%) of the outstanding voting securities of the Company (or its successor entity) immediately following such transaction or transactions.

"Cause" means (a) the willful and continued failure or refusal of the Executive to substantially perform the duties required of him or abide by the code of conduct applicable to

him as an Executive of the Company after the Executive is given written notice of such duties or code of conduct by the Company, (b) any willful and material violation by the Executive of any law or regulation applicable to the business of the Company or any of its Subsidiaries, or the Executive's conviction of, or a plea of nolo contendere to, a felony, or any willful perpetration by the Executive of a common law fraud, or (c) any other gross negligence or willful misconduct by the Executive that is materially injurious to the financial condition or business reputation of, or is otherwise materially injurious to, the Company or any of its Subsidiaries.

Section 2.      **Management Units.**

(a)      Grant of the Management Units.  The Company hereby grants to the Executive five hundred and ninety-six (596) Management Units.

(b)      Vesting.  The Management Units shall be unvested upon grant, and shall vest over a five-year period, with 20% of the aggregate Management Units granted to the Executive to vest beginning on November 10, 2006 and on each anniversary thereof; provided that the Executive continues to be employed by the Company or its Subsidiaries on each such vesting date.

(c)      Change of Control.  Upon a Change of Control of the Company or an initial public offering of the Company's equity securities (or the equity securities of a successor entity of the Company pursuant to Section 3.9 of the LLC Agreement), all unvested Management Units (or securities issued in lieu thereof by a successor entity pursuant to Section 3.9 of the LLC Agreement) shall vest . immediately; provided that the recipient has remained continuously employed by the Company. or its Subsidiaries through the date on which such initial public offering or Change of Control is consummated.  Upon a Change of Control and the concurrent vesting of the outstanding Management Units, the Executive shall have a Tag-Along Right with respect to such Change of Control, as set forth in Section 3.5(c) of the LLC Agreement, and the Executive shall be treated in connection with his exercise of the Tag-Along Right as if he were holding Common Units; provided, however, that the consideration to be paid with respect to such Management Units vis-à-vis the Common Units shall be determined based on the relative Fair Market Value of each Membership Unit in accordance with the terms of the LLC Agreement.

Section 3.      **Forfeiture.**

(a)      Unvested Units.  In the event that the Executive's employment by the Company or its Subsidiaries is terminated for any reason or for no reason, all unvested Management Units shall be forfeited immediately upon such termination of employment and become null and void.

(b)      Vested Units.

(i)      In the event that the Executive's employment by the Company or its Subsidiaries is terminated by the Company or by the Executive for any reason or no reason, except for terminations for Cause by the Company or by reason of death of the Executive, the Company shall have the right, but not the obligation, to repurchase all or any portion of the vested Management Units held by the Executive (and/or his Permitted Transferees or estate) within 90 days of the termination of employment at a purchase price equal to the Fair Market Value of the vested Management Units; provided, however, the Company shall have the right to assign its right of repurchase hereunder to

any other person, at the sole discretion of the Company, including, but not limited to, the then Members of the Company; provided further, in the event that the Executive's employment by the Company is terminated by reason of the death of the Executive, the Company shall offer to repurchase all of the vested Management Units held by the Executive in the manner set forth in this Section 3(b)(i).

(ii)    In the event that the Executive's employment by the Company or its Subsidiaries is terminated at any time by the Company for Cause, all vested Management Units shall be forfeited immediately upon such termination of employment and become null and void.

Section 4.    Restrictions.

(a)    Prohibitions on Transfer.  Notwithstanding any provision to the contrary in this Agreement, the Management Units are not transferable except in accordance with Section 3.5 of the LLC Agreement.

(b)    Restricted Securities.  The Executive acknowledges and understands that (i) the issuance of the Management Units will not be registered under any federal, state or other securities law, and they will therefore be "restricted securities" under Rule 144 under the Securities Act, and (ii) the Management Units may be resold only if registered pursuant to the provisions of the Securities Act or if an exemption from registration is available, and (iii) the Company is not required to register the Management Units, except pursuant to any registration rights granted to the Executive pursuant to the Registration Rights Agreement entered into by the Executive with the Company dated as of July 29, 2004.

Section 5.    Representations and Warranties.

(a)    The Company hereby represents and warrants to the Executive that (i) the Company is duly formed and validly existing and has full company power and authority to enter into and perform this Agreement, (ii) the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, including, without limitation, the issuance of the Management Units, have been authorized by the Board of Managers of the Company, (iii) this Agreement has been duly executed and delivered and constitutes a valid and binding obligation of, and shall be fully enforceable against, the Company, and (iv) the Management Units, when issued and delivered upon due execution of this Agreement by the Company and the Executive, will be duly authorized, validly issued and fully paid.

(b)    The Executive hereby represents and warrants to the Company that (i) this Agreement has been duly executed and delivered by the Executive and constitutes a valid and binding obligation of, and shall be fully enforceable against, the Executive, (ii) the Executive will notify the Company of the Executive's intention to make an election pursuant to Section 83(b) of the Internal Revenue Code of 1986, as amended, with respect to the Management Units for the Executive's taxable year ending December 31, 2005, (iii) the Executive is acquiring the Management Units for its own account and not with a view to distribution or resale in any manner which would be in violation of the Securities Act, and (iv) the Executive is an "accredited investor" within the meaning of Rule 501(a)(4) under the

Securities Act and has generally such knowledge and experience in business and financial matters and with respect to investments in securities of privately held companies that the Executive is capable of understanding and evaluating the merits and risks, and is able to bear the economic risk, of acquiring the Management Units pursuant to this Agreement.

**Section 6.     Miscellaneous.**

(a)     Amendment.  No amendment or modification of any of the provisions of this Agreement shall be effective unless in writing and signed by both the Company and the Executive.

(b)     Entire Agreement.  This Agreement and the LLC Agreement constitute the entire agreement and understanding between the Company and the Executive with respect to the Management Units and supersede all prior agreements and understandings, both written and oral, with respect to the Management Units.  This Agreement and the powers, preferences, rights, qualifications and limitations of the Management Units granted hereunder shall remain subject to the terms of the LLC Agreement and any amendments or modifications thereto.

(c)     Governing Law.  This Agreement and all rights, remedies, liabilities, powers and duties of the parties hereto shall be construed and interpreted according to, and governed by, the laws of the State of Delaware applicable to agreements made and to be performed entirely within such state.

(d)     Notices.  All notices, requests, or other communications provided for or permitted to be given under this Agreement must be in writing and must be given either by depositing that writing in the United States mail, addressed to the recipient, postage paid, and registered or certified with return receipt requested, or by delivering that writing to the recipient in person, by courier, or by facsimile transmission; and, except as otherwise provided in this Agreement, a notice, request, or consent given under this Agreement is effective on receipt by the Person to receive it.  All notices, requests, and consents to be sent to a party must be sent to or made at the addresses given for that party below (or such other address as that party may specify by notice to the other party):

> If to the Company:
>
> Phoenix Brands LLC
> 300 Atlantic Street
> Stamford, CT 06901
> Facsimile: (203) 975-0352
> Attn: Mark Landry
>
> If to the Executive:
>
> Sanjiv Mehra
> 11 Stonehouse Road
> Scarsdale, NY 10583

(e)  <u>Severability.</u> Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability (but shall be construed and given effect to the extent possible), without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

(f)  <u>Status as an Officer.</u> Neither this Agreement nor the Management Units granted hereunder shall confer upon the Executive the right to continue to serve as an officer of the Company.

(g)  <u>Successors.</u> This Agreement shall be binding upon and shall inure to the benefit of each party hereto and its successors and permitted transferees.

(h)  <u>Payment of Withholding Tax.</u> In the event the Company determines that any federal, state or local tax or any other charge is required by law to be withheld or paid with respect to the grant or vesting of the Management Units, the Executive shall, upon notice from the Company, pay to the Company, in cash, an amount equal to such withholding tax or charge as determined by the Company in its sole discretion. In the case taxes or other charges are determined to be payable on the grant of Management Units, the Company may defer issuing such Management Units and admitting the Executive as a member of the Company with respect to such Management Units until satisfactory arrangements for the payment of such tax or other charge have been made.

**IN WITNESS WHEREOF**, the parties hereto have executed and delivered this Agreement as of the date first written above.


_____
Sanjiv Mehra


PHOENIX BRANDS LLC

By: _____
Name: E. Mark Landry
Title: President & CEO


80317855_1.DOC